IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: | : |
| | :    CHAPTER 13 |
| GERALD A. BENDER, SR. and | : |
| PATRICIA A. BENDER, | :    Bankr. No. 08-21193 REF |
| Debtors. | : |

DEBTOR'S MEMORANDUM IN FURTHER SUPPORT
OF HIS OBJECTION TO UNAUTHORIZED PROOFS OF CLAIM
FILED BY PHELAN, HALLINAN & SCHMIEG, LLP

Debtor Gerald A. Bender, Sr., by his undersigned attorneys, hereby submits this memorandum in further support of his objection to all proofs of claim executed and filed in the above matter by lawyers affiliated with the law firm of Phelan Hallanin & Schmieg, LLP ("Phelan firm").

I. BACKGROUND

On January 29, 2010, Debtor filed his Objection to all proofs of claim filed in this proceeding by the Phelan firm on the ground that the "creditor" identified in the Phelan firm's filings -- "Wachovia Bank, N.A., Trustee for the Pooling and Servicing Agreement dated as of November 1, 2004, Asset-Backed Pass-Through Certificate Series 2004-WWF1." ("Series 2004-WWF1 PSA") -- had no interest in or standing to assert any claim against the Debtor.

At ¶¶ 10-13 of his Objection, and at ¶¶ 112-136 of Exhibit B thereto, the Debtor demonstrated that "Wachovia Bank, N.A." ("Wachovia"), the party on whose behalf the Phelan firm filed its Proofs of Claim, had not acted as "trustee" for the Series 2004-WWF1 PSA since December 30, 2005, approximately two and a half years before the

Debtor filed his Chapter 13 petition in this matter on June 4, 2008. The Phelan firm purported to act on "behalf" of Wachovia in this and other cases despite the fact that Wachovia's Senior Vice President of Wachovia, Mark A. Farmer, made the Phelan firm aware that such representation was improper by letter dated October 24, 2007, more than eight months before the Phelan firm filed its initial Proof of Claim against the Debtor on July 3, 2008. Objection ¶¶ 2, 10 and Exhibit A thereto.

In his Objection, the Debtor referred this Court to numerous cases in which federal and state judges throughout the United States have held that it is essential for a mortgagee to demonstrate its legal standing to assert a claim against a debtor as a jurisdictional prerequisite for standing under Article III of the United States Constitution. Objection ¶¶ 13 and Exhibit A thereto at ¶¶ 67-73. In the words of the Hon. Christopher A. Boyko of the United States District Court for the Northern District of Ohio, "the federal courts must act as gatekeepers, assuring that only those who meet diversity and standing requirements are allowed to pass through." *In re Foreclosure Cases*, 2007 WL 3232430, at * 3 n.3 (N.D. Ohio, Oct. 31, 2007).

Days after the Debtor filed his Objection to the Phelan Firm's Proofs of Claim, on February 9, 2010, Andrew L. Spivack of the Phelan firm filed yet another Proof of Claim against the Debtor (Claim 6-4, attached here as Exhibit A), this time purporting to act on behalf of "U.S. Bank National Association As Successor Trustee To Wachovia Bank, N.A., Trustee for the Pooling and Servicing Agreement dated as of November 1, 2004, Asset-Backed Pass-Through Certificate Series 2004-WWF1." That same day, Jonathan J. Bart ("attorney Bart") of Wilentz Goldman & Spitzer, P.A., litigation defense counsel for the Phelan firm in *Rhodes v. Diamond*, No. 5:09-cv-01302-CDJ (E.D.Pa.) ("*Rhodes v.*

*Diamond"),* also entered his appearance in this Court on behalf of U.S. Bank, N.A. ("U.S. Bank") as purported Trustee of the Series 2004-WWF1 PSA. *See* Docket item 77, attached here as Exhibit B. As with their earlier "representation" on "behalf" of Wachovia, neither Spivack nor Bart have attempted to describe, much less demonstrate with evidence, how U.S. Bank acquired proper legal standing to assert a claim against the Debtor in this proceeding.

On March 9, 2010, the Phelan firm filed a response to the Debtor's Objection.[1] As shown below, this response fails to address the substance of the Objection in any meaningful way.

---

[1] On March 11, 2009, the Phelan Firm filed a memorandum that, without more, merely reprises distorted and intemperate arguments made by the Phelan and Wilentz firms to the District Court in *Rhodes v. Diamond.* Except for pointing out their strong resemblance to other presentations that have prompted judicial criticism elsewhere, these arguments do not warrant a reply here. *See First American Title Ins. Co. v. JP Morgan Chase & Co.,* 2007 U.S. Dist. LEXIS 66371, at *33 (W.D.Pa., Sept. 7, 2007) (Two motions for attorneys fees were granted against attorney Bart for his "abuses of the removal process" under 28 U.S.C. §§ 1332, 1447 (at *33), including "hyperbolic statements" made without "underlying factual basis" (at *20), "misstate[ment]" of a controlling legal "standard" (at *25) and assertion of unsustainable legal position that should have been "revealed" to counsel with "little or no research" (at *30); attorney Bart was admonished by the Court (1) to "refrain from 'offensive conduct'" and from "'disparaging personal remarks or acrimony' toward opposing counsel" and (2) to "adhere to the adage made famous by Sergeant Joe Friday of *Dragnet* fame – 'Just the facts, Ma'am' – and the law." (at *35). *See also In re Nosek,* 386 B.R. 374, 380 (Bankr. D. Mass 2008), ("The Court has had to expend time and resources, as have debtors already burdened in their attempts to pay their mortgages, because of the carelessness of those in the residential mortgage industry and the bombast this Court and others have encountered when calling them on their shortcomings," *aff'd in part, rev'd on other grounds,* 406 B.R. 434, 436 (D.Mass. 2009) ("This case presents the unedifying spectacle of a litigant and its lawyers engaging in egregious misrepresentations and, now that they have been sanctioned for such misconduct, scrambling to pass the blame on to others"); *In re Taylor,* 407 B.R. 618, 648 n. 60 (Bankr. E.D.Pa. 2009), *rev'd on other grounds,* 2010 U.S. Dist. LEXIS 16080 (E.D.Pa. Feb. 18, 2010) (court criticized the "aggressive stance" taken on behalf of a foreclosure firm represented by attorney Bart, who failed to acknowledge "any deficiencies [in his client's] practice," and argued that "the problem was everyone but the responsible attorneys"; the Court surmised that "posture" adopted by attorney Bart's client represented the slash-and-burn "advocacy of its counsel" rather than that of the client itself).

## II. ARGUMENT

### A. THE LEGAL STANDING OF THE DEBTOR'S MORTGAGE CREDITOR IS UNESTABLISHED

Although the Phelan firm, with the assistance of attorney Bart, has argued about the propriety of several proofs of claims filed in the name of Wachovia, Wachovia's standing to maintain any claim against the Debtor has at no time been demonstrated. In its response to Debtor's Objection, the Phelan firm argues that its misidentification of the proper entity with a legal interest in Debtor's mortgage can be overlooked as irrevelant and unimportant. This despite the fact that the Phelan firm acknowledged the deficiency of its earlier inaccurate Proofs of Claim by filing a new document that identifies U.S. Bank as the proper creditor in its ostensible capacity as "successor" to Wachovia as trustee for the Series 2004-WWF1 PSA. It has done so without documentation or description of the means by which U.S. Bank has come to possess -- if it actually it does possess -- any legal interest in the Debtor's mortgage.

Although a creditor's failure to attach documentation or explanation supporting its claim under Fed. R. Bankr. P. 3001(c) is not, by itself, sufficient to disallow or reduce a claim,[2] lack of supporting documentation or explanation strips a claim of any *prima facie* validity. *In re Gilbreath*, 395 B.R. 356, 362 (Bankr. S.D. Tex. 2008), *citing In re Armstrong*, 320 B.R. 97, 104-05 (Bankr.N.D.Tex.2005). *See also In re Wells*, 407 B.R. 873, 882 (Bank. N.D. Ohio 2009), *citing In re Kincaid*, 388 B.R. 610, 614 (Bankr. E.D. Pa. 2008). While the party seeking to invoke federal jurisdiction in all cases has the burden of

---

[2] *See In re Lapsansky*, 2006 Bankr. LEXIS 3736 (Bankr. E.D.Pa. Oct. 31, 2006 (Fehling, J.).

4

establishing standing,3 the Bankruptcy Code also imposes a duty upon a creditor in these circumstances to support its claim with documentation or other evidence. *Id.* at 883, *citing Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 20-21 (2000). As the Court stated in *In re McGill,* 2009 Bankr. LEXIS 2813, at *4 (Bankr. E.D.Pa. June 11, 2009) (*citing In re Allegheny Intern., Inc.,* 954 F.2d 167, 173-74 (3d Cir.1992)), "The burden of persuasion is always on the claimant to establish its entitlement to its claim." *See also In re Danna,* 2009 Bankr. LEXIS 179, at *16 (Bankr. S.D. Ohio Jan. 20, 2009) (finding insufficient evidence of ownership by party asserting claim and ordering evidentiary hearing).

Because the Phelan firm's response to the Debtor's Objection is unsupported by anything more than unsubstantiated assertions of fact, its burden of persuasion has not been met.

The Phelan firm relies instead on legal theories that do not stand up to reasonable examination. As one example, the Phelan firm argues that, because the Debtor's Objection follows confirmation of a Chapter 13 plan, the Court's consideration of the issue of standing is barred by *res judicata* under *In re Szostek,* 886 F.2d 1405 (3d Cir. 1989). *See* Response of U.S. Bank National Association as Successor Trustee to Wachovia Bank, N.A., as Trustee Pooling and Servicing Agreement dated as of November 1, 2004 Asset Backed Pass-Through Certificates Series 2004-WWF1 to Debtors' Objection to Proof of Claim, filed by the Phelan firm on March 9, 2010 ("Phelan Resp.") at pages 1-2 and ¶ 10;

---

3
*In re Jamuna Real Estate, LLC,* 382 B.R. 263, 269 (Bankr. E.D. Pa., 2008) ("[S]tanding must be demonstrated and ... [the party seeking federal court relief] bears the burden of proof with respect to such demonstration") and *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992) cited therein.

Memorandum of Law in Opposition to Debtors' "Objection to Unauthorized Proofs of Claim Filed By Phelan, Hallinan & Schmieg, LLC" ("Phelan Mem.") at 3-5.

This argument cannot be reconciled with fundamental federal jurisprudence, and it misapplies the holding and the rationale of the Third Circuit in *Szostek*.

As Justice Sandra Day O'Connor observed, "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc.v. City of Dallas*, 493 U.S. 215, 231 (1990), *citing Allen v. Wright*, 468 U.S. 737, 750 (1984). "The question of standing is not subject to waiver" and federal courts are "required to address the issue even if the parties fail to raise the issue" – even after a case has proceeded to final judgment after trial. *United States v. Hays*, 515 U.S. 737, 742 (1995). *See also Medtronic Sofamor Danek Usa v. Globus Medical*, 637 F.Supp.2d 290, 298 (E.D. Pa. 2009) (and cases cited therein).

Nothing in *Szostek* changes these bedrock Constitutional principles. As the Hon. Midge Rendell explained in *In re Mansarary-Ruffin*, 530 F.3d 230, 238-39 (3d Cir 2008), while *Szostek* noted the importance of "finality" of plan confirmation under 11 U.S.C. §1327(a), it also recognized that "the policy of finality must yield" to more fundamental Constitutional considerations.

Similarly unavailing is the Phelan firm's *res judicata* argument under "Pennsylvania law." According to the Phelan firm, under Pa. R. Civ. P. 1028(a)(5) and 1032(a), it was incumbent upon the Debtor to raise a preliminary objection concerning Wachovia's lack of capacity to bring its foreclosure action in the Court of Common Pleas for Berks County, in the absence of which "this issue was waived by the Debtors, and the

6

finding of proper standing is *res judicata* and may not be subsequently challenged." Phelan Resp. ¶ 11; Phelan Mem. at 5-8.

As stated in his Objection at ¶ 11, the Debtor has filed a petition in state court seeking an appropriate remedy for "Wachovia's" lack of standing to obtain a judgment of mortgage foreclosure against him. An initial hearing on that petition is scheduled for March 31, 2010. Whatever the state court decides, this is an independent *federal* proceeding in which the issue of the standing of Wachovia (and now, by virtue of the Phelan firm's latest proof of claim filing, U.S. Bank) is governed by Article III of the United States Constitution. The Phelan firm's Pennsylvania state law arguments are not germane to the relevant issue here – whether Wachovia and U.S. Banks are creditors of the Debtor entitled to file proofs of claim under Section 501(a) of the Bankruptcy Code.

The Phelan firm also misapprehends Pennsylvania law. As the state Superior Court explained in *Grom v. Burgoon*, 448 Pa. Super. 616, 672 A.2d 823 (1996):

> [W]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action. It is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court sua sponte.

*See also In re B.L.J., Jr.*, 938 A.2d 1068 (Pa. Super. Ct., 2007); *In re Estate of Luongo*, 823 A.2d 942, 953 (Pa. Super. Ct., 2003); *Hill v. Divecchio*, 425 Pa.Super. 355, 625 A.2d 642 (1993), *appeal denied*, 538 Pa. 613, 645 A.2d 1316 (1994)).

In Pennsylvania, a mortgage foreclosure complaint must set forth "the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments." Pa.R.C.P. 1147(a)(1). Thus, by statute, only mortgagees or their assignees – the legal owners of mortgage instruments -- are vested with

7

legal standing to initiate and prosecute foreclosure actions. Because this statute designates who may sue, standing is a jurisdictional prerequisite and that is an issue that may be raised "at any time, by any party or by the court *sua sponte*." The cases cited at Phelan Mem. at 6-7, none of which are on point, do not hold otherwise.

Likewise ill-conceived is the Phelan firm's argument that, under Pennsylvania law, "the real party in interest is the Trust, not the Trustee." Phelan Resp. at ¶¶ 10-11, *citing Marin v. Leslie*, 2008 US Dist. LEXIS 80287 (W.D.Pa. 2008), *aff'd* 2009 US App. LEXIS 15138 (3d Cir. 2009).

*Marin* does not stand for the proposition for which it is cited by the Phelan firm. In *Marin*, a litigant brought a § 1983 action as a trustee and co-beneficary of his father's trust, seeking damages allegedly arising from an improper property tax sale. 2008 US Dist. LEXIS 80287, at *1. The District Court dismissed the case *sua sponte* for lack of standing because, as a beneficiary, the litigant had "only a contingent interest in the trust res" and, as a trustee, the litigant was a *pro se* person who could not "pursue a claim in a representative capacity in federal court." 2009 U.S. App. 15138, at *218. On appeal, the Third Circuit held that the District Court erred to the extent that it failed to recognize that the litigant **did** have standing as trustee to sue on behalf of the trust, but the lower court was correct in its determination that the litigant could not represent the trust on a *pro se* basis. *Id.*, at *219.

If the Phelan firm believed that a trust could and should act independently of its appointed trustee, it would not have found it necessary to file another amended Proof of Claim substituting U.S. Bank for the erroneously named Wachovia as "trustee" of the Series 2004-WWF1 PSA.

8

Even if one were to assume for the sake of argument that Pennsylvania law governs the operation the Series 2004-WWF1 PSA, 15 Pa.C.S. 9502 explicitly provides that business trusts act directly through their *trustees*. Section 9502 provides:

> A business trust may be created in real or personal property, or both, with *power in the trustee*:
>
> (1) *To receive title to, hold, buy, sell, exchange, transfer and convey real and personal property for the use of the business trust.*
>
> (2) To take, receive, invest or disburse the receipts, earnings, rents, profits or returns from the trust estate.
>
> (3) To carry on and conduct any lawful business designated in the deed or other instrument of trust, and generally to do any lawful act in relation to such trust property that any individual owning the same absolutely might do.
>
> (4) To merge with another business trust or other association, to divide or to engage in any other fundamental or other transaction contemplated by the deed or other instrument of trust.

(emphasis supplied)

In Pennsylvania and elsewhere, the authority and duty of a trustee to act in the name and on behalf of its trust is beyond question. But in arguing that a different conclusion somehow applies here, the Phelan firm presents no documents evidencing the formation, composition and procedural implementation of the Series 2004-WWF1 PSA, nor does it offer any other evidentiary description of the relative responsibilities of the trustee, originator, seller, depositor, master servicer and sub-servicers of that mortgage-backed instrument.

The sole "factual" basis of the Phelan firm's response to the Debtor's Objection appears in the form of a selective quotation from an unproduced and unidentified "Pooling

9

and Servicing Agreement." Phelan Resp. at ¶¶10-11.[4] From this alone, the Phelan firm asks the Court to conclude that "the identity of the Trustee is immaterial" to the inaccurate proofs of claim that the Phelan firm has filed in this case. Phelan Resp. at 11.

Despite the Phelan firm's contention that "Wachovia Bank, N.A.'s sole obligation was to serve as fiduciary for the holder of the Mortgage and Note, the Trust" (Phelan Resp. ¶ 2), a prospectus and supplemental prospectus filed with the U.S. Securities and Exchange Commission ("SEC") in November 2004 makes clear that the trustee of the Series 2004-WWF1 PSA serves in a substantively important capacity with respect to operation of the trust and with respect to legal ownership of mortgages owned by the trust.[5] Among other things:

---

[4] The Phelan firm contends that this unproduced agreement vests its "master mortgage servicer" client with "full power and authority" to act in connection with mortgage servicing and administration under the Series 2004-WWF1-PSA. However, the Phelan firm offers no evidence of the circumstances and manner in which any such authority may be properly exercised. At minimum (and apart from production of an unabridged copy of the pooling and servicing agreement itself), such evidence would include powers of attorney specifically authorizing action as the trustee's agent, as well as other agreements between the so-called "master servicer" and its "sub-servicers," including the one that purportedly hired the Phelan firm to act on behalf of the trust. A servicing agent can have standing if it acts as an agent for the mortgage holder, here the trustee, provided that the servicer can demonstrate its agency status and the fact that its principal is the mortgage holder. *See In re Vargas*, 396 B.R. 511, 520 (Bankr. C.D. Cal. 2008). If the sub-servicer "represented" by the Phelan firm did have such a power of attorney or other written authorization on behalf of the trust, the sub-servicer could have filed a proof of claim directly in its own name. The fact that it did not do so, but relied instead on the identity of the trustee, suggests that no such documentation exists.

[5] *See* http://edgar.sec.gov/Archives/edgar/data/1308503/000088237704002306/0000882377-04-002306-index.htm. Although the Phelan firm maintains that Wachovia Bank, N.A. "is still, as of the date of this filing, listed as the Trustee for the Mortgage Trust on the Securities and Exchange Commission's public web site" (Phelan Resp. at ¶ 7), it has not provided the reference to which it alludes. In any event, Park Place Securities, Inc., the depositor for the Series 2004-WWF1 PSA, filed a Form 15 with the SEC on January 20, 2005, announcing that there were less than 300 certificates holders for that investment, which had the effect of terminating the trust's public reporting responsibilities under Rules 15(d)(6) and 12h-3 (b) (1) (2) of the rules and regulations under the Securities and Exchange Act of 1934.
*See* http://edgar.sec.gov/Archives/edgar/data/1308503/000105640405000861/pps04ww1_2004.txt. Given that Wachovia subsequently terminated its role as trustee for the Series 2004-WWF1 PSA on December 30, 2005, it is of no consequence that the SEC's web site may reflect only the most recent information filed with the Commission.

10

- the master servicer is "required" to "take <u>title in the name of the trustee, on behalf of the securityholders</u>" in connection with "mortgaged properties relating to defaulted mortgaged assets." (Prospectus at 25; emphasis supplied);

- the trustee exercises a duty to obtain and examine (a) reports from independent public accounting firms attesting to the master servicer's compliance with contractual obligations owed to the trust in accordance with objective industry standards; and (b) annual statements signed by an officer of the master servicer attesting that the master servicer has fulfilled its obligations to the trust. (Prospectus at 48); and

- In the event of default by the mortgage servicer, the trustee is empowered to "terminate all of the rights and obligations of the master servicer under the pooling and servicing agreement relating to the trust fund and in and to the mortgage assets" and to "succeed to all of the responsibilities, duties and liabilities of the master servicer. (Prospectus at 49).

The role of the trustee of the Series 2004-WWF1 PSA is so significant that investment eligibility requirements for pension plans and other employee benefit plans regulated under the Employee Retirement Income Security Act of 1974 provide that:

> The trustee, or any agent with which the trustee contracts to provide trust services, must be a substantial financial institution or trust company experienced in trust activities and familiar with its duties, responsibilities and liabilities with ERISA and the *trustee, as legal owner of the assets of the trust, must enforce all the rights created in favor of Securityholders of the trust.....*

Prospectus at 130 (emphasis supplied).

11

Notwithstanding the Phelan firm's contention that when Wachovia was "replaced" as trustee for the Series 2004-WWF1 PSA on December 30, 2005 "it in no way affected the Trust or its assets" (Phelan Mem, at 4, emphasis in original), a transfer of legal ownership of the trust assets did occur, and the real party in interest changed, even if the mortgage servicer did not. As the court stated succinctly in *In re Hwang*, 396 B.R. 757, *766 (Bankr. C.D. Cal. Sept. 29, 2009) "[i]f a loan has been securitized, the real party in interest is the trustee of the securitization trust, not the servicing agent."

The Debtor has demonstrated -- and the Phelan firm is unable to deny -- that Wachovia was not trustee for the Series 2004-WWF1 PSA when the Phelan firm (1) entered its appearance in this case, (2) filed multiple proofs of claims in the name of Wachovia, (3) repeatedly opposed confirmation of Debtor's Chapter 13 plan, and (4) on behalf of "Wachovia" and together with attorney Bart, litigated the Debtor's substantive challenge to the amount of arrearages listed in the Phelan firm's proofs of claim, including admittedly overstated sheriff's fees. Based on these facts, Wachovia had no standing to assert any interest against the Debtor. All proofs of claim filed by the Phelan firm on behalf of Wachovia are improper and should be stricken.

The most recent proof of claim filed by the Phelan firm on behalf of U.S. Bank is also infirm. As a matter of public record in the Office of the Recorder of Deeds for Berks County, the holder of Debtor's mortgage is **Wachovia** as Trustee for the Series 2004-WWF1 PSA, which was the intended result of bogus assignments filed by the Phelan firm's agents after commencement of the Phelan firm's foreclosure action against the Debtor. The mortgage has not since been assigned to U.S. Bank. Unless U.S. Bank can affirmatively demonstrate that it does own the Debtor's mortgage, the securityholders of the Series 2004-WWF1 PSA only legal remedy to recover money owed to them may be through civil actions against the title insurer, mortgage servicer and the Phelan firm itself. There is currently no evidence that U.S. Bank owns the Debtor's mortgage and, thus, no evidence of U.S. Bank's standing to file a proof of claim in this action.

In a similar situation where "no ownership of the Debtor's mortgage has been established," it is unclear "when and by whom that mortgage was assigned," and the "secured creditor created a paper trail" that was "nearly impossible to follow," the Hon Jean K. FitzSimon of this Court sustained the Debtor's objection to the creditor's proof of claim. *In re Brooks*, 2008 Bankr. LEXIS 621, * 7, 9 (Bankr. E.D.Pa. Feb 13, 2008). The Court should do likewise here.

While the Phelan firm says that it cannot "ascertain exactly what is the 'bewildering procedural posture that must now be corrected' that Defendants' counsel now speaks of" [sic] (Phelan Resp. at 14), the chain of title to the Debtor's mortgage is hopelessly muddled, putting the Debtor and the Court in the position of trying to untangle the mess that the Phelan firm and its client have created. This is an all-too-common phenomenon in the mortgage foreclosure industry. In ever increasing numbers, courts throughout the United States are holding reckless creditors and their counsel responsible for this type of conduct. *See* Objection ¶¶ 13 and Exhibit A thereto at ¶¶ 67-73. *See also*:

- *In re Wells*, 407 B.R. 873, 883 (Bank. N.D. Ohio 2009) ("U.S. Bank failed to show that it had standing to file claim 1, and also failed to show at the hearing that it is entitled to enforce the note and mortgage. Claim 1 is, therefore, disallowed under 11 U.S.C. § 502(b)(1). The court will issue a separate show cause order on U.S. Bank regarding its factual and legal bases for filing claim 1");

- *In re Hayes*, 393 B.R. 259, 269 (Bankr. D. Mass. 2008) ("The Court and the Debtor are entitled to insist that [a creditor] establish its standing ... through the submission of an accurate history of the chain of ownership of the mortgage. Absent such proof, ... a proof of claim filed by the wrong party, to which an objection is filed, must be disallowed");

- *In re Nosek*, 386 B.R. 374, 380 (Bankr. D. Mass 2008), *aff'd in part, rev'd on other grounds*, 406 B.R. 434, 436 (D.Mass. 2009) (court will "not tolerate a lender's or servicer's disregard for the rules that govern litigation, including contested matters, in the federal courts. It is the *Creditor's* responsibility to keep a borrower and the Court informed as to who owns the note and mortgage and is servicing the loan, not the borrower's or the Court's responsibility to ferret out the truth"); and

- *In re Canellas*, 2010 Bankr. LEXIS 390, at *12 (Bankr. M.D. Fla. Feb. 9, 2010 (motion for relief from stay denied because "Movant's submissions are insufficient to establish it is the owner and holder of the Note and Mortgage or is authorized to act for whoever holds these documents").

14

The Phelan firm also argues that it was authorized to file proofs of claim on behalf of a party without legal standing because it "received authorization to file the Proof of Claim on behalf of ASC, by virtue of a referral dated June 16, 2008." Phelan Resp. at 3. The Phelan firm maintains that, in so acting, "it merely followed the instructions of its client, the servicer America's Servicing Company." Phelan Mem. at 5. Although ASC's "referral" and "instructions" have no relationship to the issue of the standing of Wachovia and U.S. Bank to file proofs of claims on behalf of the Series 2004-WWF1 PSA against the Debtor, those extraneous matters illustrate precisely what is wrong with the Phelan firm's reckless filings in this case.

In an effort to focus strictly on the merits of the issues and avoid what led one court to express "sadness" about "self interested excesses" that have caused part of the legal profession to have "fallen so low,"[6] Debtor's counsel did not request the Court to assess sanctions against the Phelan firm and its co-counsel -- despite conduct that very well may warrant them. If sanctions were an issue for the Court to consider, the blind reliance of the Phelan firm on a "referral" and "instructions" from its sub-servicer client would be no excuse for its lawyers' failure to investigate the factual basis of their filings under Fed. R. Bankr. P. 9011.

As the Bankruptcy Court observed in *In re Nosek*, foreclosure lawyers have "a responsibility to know its client's role in a case. It cannot rely on the representations of its client; it has a responsibility to question and probe to the extent necessary to ensure that it has elicited correct information." 386 B.R. at 384. Here, the Phelan firm was formally notified by Wachovia that it did **not** act in the capacity of Trustee of the Series 2004-

---

6. *In re Nosek*, 406 B.R. 434, 440 (D.Mass. 2009).

15

WWF1 PSA **months** before the Phelan firm filed its first improper proof of claims in this case against the Debtor. Again, to borrow the words of the Bankruptcy Court in *In re Nosek*: "At a time when mortgages and notes are bought and sold at a pace so swiftly that the assignor and assignee cannot keep up with the paperwork, had the attorneys at the [Phelan] firm checked the firm's file, they would have seen that [Wachovia was not] the real party in interest.... The firm cannot shield itself from its institutional knowledge." *Id.* at 383-84. The Phelan firm's "disregard of its own internal files" (or its failure to establish them properly in the first place) is arguably an actionable violation of Rule 9011 because, if those files had been created and reviewed, the Phelan firm's lawyers would have been on "inquiry notice that more was required than an uncritical acceptance of its client's statements. Those statements simply were not 'objectively reasonable.'" *In re Nosek*, 406 B.R. at 443.

### III. CONCLUSION

For all of the reasons expressed above, the Debtor respectfully requests this Court to sustain his Objection to all proofs of claim filed in this action by Phelan, Hallinam & Schmieg, LLP.

Dated: March 15, 2010                                               Respectfully submitted,

**BURKE & HESS**

By: /s/ Michael D. Hess
Michael D. Hess
951 Rohrerstown Road, Suite 102
On the brief:                                                       Lancaster, Pennsylvania 17601
Telephone: (717) 391-2911
John G. Narkin                                                      Facsimile: (717) 391-5808

*Attorneys for Debtor*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of March, a true and correct copy of Debtors' Memorandum in Further Support of Objection to Unauthorized Proofs of Claim Filed By Phelan, hallinan & Schmieg was served upon all counsel of record via the Court's ECF system.

/s/ Michael D. Hess